UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 14 CR 708 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| KIT CARL KLEHM | ) | |

### GOVERNMENT'S MOTION FOR HEARING ON REVOCATION OF DEFENDANT KLEHM'S BOND

The UNITED STATES OF AMERICA, by ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, Eastern Division, respectfully moves this Court to conduct a hearing as to whether defendant Kit Carl Klehm's bond should be revoked, pursuant to Title 18, United States Code, Sections 3143 and 3148. As discussed below, the government's position is that there is probable cause to believe that defendant Kit Carl Klehm has violated federal law while on bond, specifically, that he has recently been participating in a scheme to defraud using the mail, in violation of Title 18, United States Code, Section 1341.

**I.      LEGAL STANDARD**

Under Title 18, United States Code, Section 3148, a person who has been released on bond under 18 U.S.C. § 3142 shall have his bond revoked if, after a hearing, a judicial officer finds that there is probable cause to believe that the person has committed a federal crime while on release, and also finds that based on the factors in 18 U.S.C. §3142(g) there is no condition or combination of conditions of release that will assure that the person will not pose a danger to the safety of any other person or the community or that the person is unlikely to abide by any condition or combination of conditions of release.

If the court finds that there is "probable cause" to believe that while on release the defendant committed a federal offense, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the

community. If, however, the judicial officer finds that there are conditions of release that will assure that the person will not pose such a danger and that the person will abide by such conditions, the court shall treat the person in accordance with the provisions of § 3142 and may amend the conditions of release accordingly.

The standard of proof applicable in bond revocation cases is "not a particularly rigorous one." *United States v. Carr*, 2012 U.S. Dist. LEXIS 112160, *16 (N.D. Ill. August 9, 2012) (Cole). "The Government need only demonstrate that there is 'probable cause' to believe that a crime has been committed by the defendant while on bond. That requires that the evidence show 'a fair probability' that a crime has occurred and that the defendant committed it." *Id.* (internal citations omitted).

## II. BACKGROUND

In December 2014, the defendant was arrested and was released on an unsecured $50,000 bond. Docket #9. The bond included the condition that defendant must not violate any federal, state or local law while on release.

In May 2015, a grand jury returned an indictment against defendant, alleging the defendant committed six counts of wire fraud. Defendant appeared for arraignment and the existing bond was ordered to stand at that time. Docket #44.

In March 2016, the defendant entered a plea of guilty to Count One of the indictment. Docket #59.

## III. RELEVANT FACTS

### A. Summary of Factual Findings

Victim A was a company looking to get into the beer/bar business. Victim A contacted the government, claiming the defendant defrauded it out of $26,650. Victim A claimed the defendant, who introduced himself as "Christian Klehm," was acting under the business name, "BrauerWerks." Victim A asserted that BrauerWerks failed to provide brewing equipment that it had contracted to provide, and never refunded the $26,650 that Victim had paid to BrauerWerks.

According to the government's investigation, BrauerWerks, owned by the defendant (aka, "Christian") and his sibling (Individual 1), contracted to provide Victim A with beer brewing equipment via a Chinese manufacturer. In November 2015, Victim A gave BrauerWerks $26,650, which was half of the contracted price. The defendant and Individual 1 spent all of the money on personal expenses, unrelated to the brewing equipment, with the defendant spending approximately $16,800 of it. The defendant told Victim A that the equipment had been ordered and manufactured. When it was time for BrauerWerks to deliver the equipment, the defendant told Victim A that it had received the equipment from the manufacturer but sold it to another company because Victim A requested delivery of the equipment before tendering the second half of the payment. Victim A accepted this explanation but requested refund of its initial payment. The defendant, however, completely cut off contact with Victim A, never refunding the initial payment.

Using drawings of the equipment provided by the defendant, Victim A tracked down the Chinese manufacturer of the equipment; federal law enforcement also followed up with the manufacturer. The manufacturer stated the drawings belonged to it, that it sent the drawings to BrauerWerks at its request, but that BrauerWerks never ordered or paid any money towards the equipment; of course, then, the manufacturer never shipped that equipment to BrauerWerks.

B. Detailed Chronology of Facts

1. According to Individual 1, Individual 1 was the defendant's sibling. Individual 1 resided in Leicester, North Carolina. Individual 1 had moved from Chicago to North Carolina around 2004, to open a restaurant.

2. According to Individual 1, Individual 1 attended the brewing program at Asheville Technical Community College, in North Carolina, from August of 2013, through May of 2015, at which time Individual 1 graduated.

3. According to Individual 1, the defendant contacted Individual 1 in the fall of 2014 and suggested they go into business to sell brewing equipment. The defendant claimed to have a brewing equipment manufacturing contact in China.

4. According to Individual 1 and online records for the North Carolina Secretary of State, in accord with the defendant's suggestion, Individual 1 started BrauerWerks, LLC, around November 2015.

5. According to Individual 1 and bank records, Individual 1 opened an account at TD Bank that was titled to both the defendant and Individual 1, "DBA Brauerwerks." The defendant and Individual 1 were the only two signatories on that account and both had access to it. Each had a debit/ATM card for the account.

6. According to Individual 1, though they were each 50% owners of BrauerWerks, the defendant typically used 80% of the money in the account.

7. According to Victim A and emails, in November 2015, Victim A contracted with BrauerWerks for BrauerWerks to sell Victim A brewing equipment for $53,300.

8. According to Victim A and emails, on November 30, 2015, Victim A mailed to Individual 1's residence in North Carolina, a cashier's check for $26,650, which was half of the agreed-upon total price of $53,300.

9. According to bank records, on December 3, 2015, Individual 1 deposited the check into the above-referenced, BrauerWerks account at TD Bank. At the time of the deposit, the balance in the account was negative.

10. According to bank records, all but $439 of the money was withdrawn by the end of December 2015. The vast majority of the withdrawals were executed via two debit/ATM cards that contained different numbers, but, as mentioned earlier, were for the same BrauerWerks bank account, on which the defendant and Individual 1 were the only signatories. One card was being used in North Carolina, and the other was being used in Illinois. The expenditures associated with the Illinois card totaled $11,842.24, with $2,460 of that amount comprising ATM withdrawals. The expenditures included restaurant dining, groceries, sundries, and clothing. Additionally, during that month, there was a $5,000 wire to the defendant's defense lawyer. The vast majority of the remaining expenditures were executed via the North Carolina card. None of the $26,650 deposit was wired to accounts or companies

in China.

11. According to Victim A and emails Victim A provided to law enforcement, Victim A communicated with "Christian," a BrauerWerks representative, via email, regarding the purchase of the brewing equipment. During the course of their communication, "Christian" used the email addresses of christian@brauerwerks.com and christian@supercars88.com.

12. According to Victim A and text messages that Victim A provided to law enforcement, Victim A communicated with "Christian" via text messaging. "Christian" was identified in Victim A's contacts as, "Christian Klehm Mobile." According to Victim A and subpoenaed phone records, the phone number for "Christian Klehm Mobile" ended in 6780.

13. According to the phone records, as of December 2015 (the last month of the subpoenaed records), the phone number that ended in 6780 was one of two numbers on a single plan. The "customer" of that plan was listed as Individual 1. Individual 1's number was identified as one that ended in 5150. The records identified no additional name associated with the number that ended in 6780, but, according to Individual 1, the number that ended in 6780 belonged to the defendant.

14. Moreover, according to a query of the Citizen Law Enforcement Analysis and Reporting (CLEAR) database conducted around June 2016, a reverse Gateway search indicated the number that ended in 6780 was an active Sprint wireless number that was assigned to "Kit Klehm." According to a utilities search for that same phone number, it was assigned to "Christian Troy," residing at 1 Main St N Algonquin, IL 60102. According to the owner of that residence, the defendant was his tenant, but signed the lease as "Christian Alexander Troy." According to the owner, after the owner heard other tenants using the name "Kit" when referring to "Christian Alexander Troy," the defendant told the owner that his name was in fact "Kit Klehm." The defendant explained that he used the name "Christian Troy" because it facilitated doing business with the Chinese.

15. In December 2015, "Christian" and Victim A communicated about meeting each other in person, as Victim A was expecting to be in the North Carolina area. The following email exchanges occurred:

> On Dec 18, 2015, at 9:54 AM
> [Victim A's email address] wrote:
> Thanks for the drawing. Do you have any time on Tuesday December 22nd, preferably in the morning, to meet face to face?
>
> From: christian@brauerwerks.com
> Subject: Re: CIP 200L .pdf
> Date: December 18, 2015 at 2:33 PM
> To: [Victim A's email address]
> Maybe ! I will let you know
>
> On Dec 20, 2015, at 9:46 PM
> [Victim A's email address] wrote:
> Christian,
> It looks like we're not going to be in Asheville until Wednesday. Needless to say, I expect to meet with you. I hope you will have the drawings ready to go over then. We can approve them and order the stainless. I will call you tomorrow morning at 9:00 am your time to set up an appointment.
>
> From: christian@brauerwerks.com
> Subject: Re: Visit
> Date: December 21, 2015 at 3:13 PM
> To: [Victim A's email address]
> Is ten am ok?

16. Victim A and "Christian Klehm Mobile" continued the above discussion via text messaging, as follows:

> 12/20/15 2:58 pm
> Victim A:
> Hey, wondering what time tuesday, and where?
>
> 12/20/15 9:47 pm
> Victim A:
> We will be in Asheville on Wednesday. I expect to meet with you. I hope the drawings will be ready to review. I will call you at 9 o'clock a.m. tomorrow to set an appointment.
>
> 12/20/15 10:32 pm
> Christian Klehm Mobile:
> Ok great I am going to my mom
> So I am trying to get the owner to meet you

    12/20/15 10:43 pm
    Victim A:
    Excellent

    12/22/15 1:11 pm
    Christian Klehm Mobile:
    Dealing with a big issue with my daughter

    12/22/15 1:25 pm
    Christian Klehm Mobile:
    [Individual 1] will meet you at high five coffee at ten am tomorrow
    Once I am done I will call you

    12/22/15 2:39 pm
    Christian Klehm Mobile:
    Called you

    12/22/15 3:05 pm
    Victim A:
    OK thanks. We're out of Cell Phone Range till tomorrow morning.
    We'll meet [Individual 1] at high five coffee at ten. Hope things work
    out with the Family, I hate to add to the stress.

    12/22/15 7:11 pm
    Christian Klehm Mobile:
    [Individual 1] the owner[1].

    17. In January 2016, "Christian" and Victim A communicated about "Christian" providing

a drawing of the equipment that Victim A had ordered. The following email communication occurred:

    On Jan 17, 2016, at 8:09 PM, christian@supercars88.com wrote:
    Drawing

    Begin forwarded message:
    From: christian@supercars88.com
    Date: January 17, 2016 at 8:08:52 PM CST
    To: christian@supercars88.com
    Subject: design for 5BBL brewhouse with gas heat 2016.01.18.pdf

    <design for 5BBL brewhouse with gas heat 2016.01.18.pdf>

---

[1] A picture of Individual 1 was provided in this text message.

>On Jan 18, 2016, at 5:12 PM,
>[Victim A's email address] wrote:
>Thanks Christian. I appreciate some activity here. Lets get this steel
>ordered so we do other things while waiting.
>
>Here are some comments I had on the drawings. If anything isn't clear,
>please let me know. I'm going to keep going over these, but this is my
>first impression. . . .

18. And, after more back-and-forth about the specifics of the drawing, "Christian" sent drawings a couple of weeks later, on January 27, 2016, as evinced by the following emails:

>On Jan 27, 2016, at 10:19 AM, christian@supercars88.com wrote:
>Begin forwarded message:
>From: christian@supercars88.com
>Date: January 27, 2016 at 6:46:01 AM CST
>To: [Victim A's email address]
>Subject: Fwd: updated drawing for 5BBL brewhouse 2016.01.27
>
><design for 5BBL brewhouse with gas heat 2016.01.27.pdf>
>
>From: christian@supercars88.com
>Subject: design for 5BBL brewhouse with gas heat 2016.01.28.pdf
>Date: January 27, 2016 at 8:45:00 PM CST
>To: [Victim A's email address]

19. Text messages during that same period establish that "Christian Klehm Mobile" was in an alleged car related business, was no longer using the BrauerWerks email address, and sent those drawings via email. Those text exchanges were as follows:

>1/23/16 11:39 am
>Christian Klehm Mobile:
>Haha maybe
>Now you know why I am busy at times I have made my own car as well
>It is 1400 hp I sell in Shanghai for 6.4m rmb
>
>Victim A:
>Wow. Is that the GTM concept car?
>
>Christian Klehm Mobile:
>Yes
>We are doing two now

Victim A:
Built in Chicago?

Christian Klehm Mobile:
Yes

Victim A:
Drive it down here to AR for the shakedown run…..
You'd make it in six hours
At 150 mph

Christian Klehm Mobile:
Cool!

1/24/16 10:00 pm
Christian Klehm Mobile:
We will have drawing and updated price by tomorrow or Tuesday I believe

Victim A:
Kewl
Let's shoot for tomorrow to keep our pace up

Christian Klehm Mobile:
I am all over it
When things are in my hands they move

1/26/16 9:00 am
Victim A:
We moving today?

1/26/16 10:36 am
Christian Klehm Mobile:
Yes I believe so I just woke up and I will check if they finished If not they will have it tonight

1/27/16 7:04 am
Christian Klehm Mobile:
Drawing in your emai

Victim A:
Thanks

>Christian Klehm Mobile:
>Sorry i went to sleep early or else you have had it last night
>Please review
>
>1/27/16 7:20 am
>Victim A:
>Will do
>
>1/27/16 8:20 am
>Victim A:
>Didn't get an email
>
>1/27/16 8:58 am
>Victim A:
>My emails to brauerwerks.com got returned.  You guys getting out of the business?
>Got drawings
>
>1/27/16 10:15 am
>Christian Klehm Mobile:
>Thanks I will get on that
>Resent the drawings

20. According to emails and text messages, in February and March, "Christian" told Victim A more about his cars business. Regarding the brewing equipment, when Victim A suggested another face-to-face meeting, "Christian" claimed he was in China. He told Victim A that he left China before he could get a picture of the equipment that Victim A requested. He told Victim A that the equipment had been ordered, manufactured, and delivered. He invoiced Victim A for the second half of the payment. Based on their communications, Victim A had questions about the invoice and was concerned about the product that Victim A was to receive. Victim A tried to have a conversation with "Christian," but "Christian" would not oblige. Eventually, "Christian" claimed he had received the product but sold it to another buyer, after Victim A did not pay the second half. Victim A then requested his initial payment of $26,650, but "Christian" never responded to Victim A's request for a refund. The illustrative text messages were as follows:

2/6/16 8:35 am
Victim A:
I'm going to be in NC next week. You in country?

Christian Klehm Mobile:
I will get your additions to the drawing your timing is not changing
I am I China for Chinese New Years
...
Christian Klehm Mobile:
My car that I designed is 1400 hp and lighter
...
Victim A:
Turbos or super charger?

Christian Klehm Mobile:
We do super charged
...
3/16/16 11:37 pm
Victim A:
OK. One more time. I want 240/1/60 on the pumps and 208-240/3/60 on the heaters

Christian Klehm Mobile2:
Copy that's
That

Victim A:
Cool

3/17/16 12:46 am
Christian Klehm Mobile:
Ok everyone understands

3/19/16 1:05 am
Christian Klehm Mobile:
We are ready

Victim A:
3/19/16 4:59 pm
To ship?

---

[2] This text message to Victim A contains a picture of a computer screen, with a text box that contains the following: "connect 1st phase of 208V/3 phase electricity" and "connect 2nd phase of 208V/3 phase electricity."

Christian Klehm Mobile:
Yup

3/19/16 5:16 pm
Victim A:
Holy ship!

3/19/16 9:16 pm
Christian Klehm Mobile:
We will need your payment before shipping

3/22/16 8:12 am
Christian Klehm Mobile:
Do you still want your brew house

Victim A:
Yea, sorry, I've gotta get with the banker

Christian Klehm Mobile:
Just making sure
I will send you the wire instructions

Victim A:
Ok, do
Will you send some pics?

Christian Klehm Mobile:
I am no longer there but I will ask

Victim A:
Thnx

Christian Klehm Mobile:
I left I waited around for a day and when you said nothing I left
...
3/23/16 1:53 pm
Victim A:
Email the invoice

3/28/16 11:01am
Victim A:
We haven't received an invoice. Also, I'm trying to determine my power draw for the mash tun, and getting outrageous numbers. Is it really four 8kw resistive heaters? 208/3?

3/30/16 6:55 am
Victim A:
I got my electrician coming. What up with the power requirements for mash tun?

3/30/16 9:11 am
Christian Klehm Mobile:
I will get you them

Victim A:
Thanks

3/30/16 12:35 pm
Christian Klehm Mobile:
I will send you the invoice today

Victim A:
Cool. How bout that power?

Christian Klehm Mobile:
I am getting that info

3/31/16 8:57 am
Victim A:
I need the power requirements for the heaters in the mash tun

3/31/16 9:59 am
Christian Klehm Mobile:
On

Victim A:
Call me, please

Christian Klehm Mobile:
Will sk
Do

3/31/16 11:53 am
Victim A:
What time?

Christian Klehm Mobile:
Under a hour

Victim A:
Ok

3/31/16 12:10 pm
Christian Klehm Mobile:
Sorry been slammed this am

Victim A:
Ok
...

3/31/16 12:33 pm
Victim A:
I know what I asked for, I'm trying to figure out what you are going to deliver

Christian Klehm Mobile:
I thought we went through this I will get you that information
...

4/6/16 12:41 pm
Victim A:
I wrote some emails w/questions, suggestions

4/7/16 11:12 am
Christian Klehm Mobile:
Saw you call will call later today

Victim A:
Thanks

Christian Klehm Mobile:
Yup

Sunday 2:27 pm
Christian Klehm Mobile:
It is done and I am waiting on you. . . .

Sunday 2:38 pm
Victim A:
When is a good time to talk about this? I need something here. You haven't even sent me a picture. I'm supposed to just cut you the final check cause you say so?

Sunday 4:42 pm
Victim A:
I am about done waiting on you Christian. I need to get my stainless shipped. Please call me. I need to make a decision tomorrow

Monday 9:04 am
Victim A:
I've got a solution. Give me a call today

Monday 8:08 pm
Victim A:
How bout a call?

Tuesday 8:13 am
Victim A:
Got an idea. Call me

Tuesday 8:52 am
Victim A:
We want to write the money. Call me

7:56 am
Christian Klehm Mobile:
I am selling you brew house this weekend or today since you do not want to pay

Friday 8:06 am
Victim A:
Call me

Friday 1:48 pm
Victim A:
Routing number?

Yesterday 5:56 pm
Christian Klehm Mobile:
Sorry it did not work out. I sold the brew house

Victim A:
Cool. Just send a check and we're square.

Yesterday 6:08 pm
Victim A:
Certified funds, please. Do you need my address?

21. The illustrative emails during that period were as follows:

On Feb 12, 2016, at 9:34 AM
[Victim A's email address] wrote:
This is what I want on my document:
3 Stacked double brites as drawn. We are waiting on a drawing. Need to add sight tubes.
3 Fermenters as drawn. This drawing is good.
1 mash tun as drawn. This drawing is good.
1 kettle as drawn. We are waiting on drawing. Need to add and specify burner.
1 heat exchanger. This has to be drawn or specified. I need at least 3 m sq. surface area
Pumps need to be specified. I need to know motor size and gpm.
Specify that all necessary valves, thermometers, etc. are included
Control system for glycol needs to be specified, along with power requirements and valve types.
I need a construction timeline and a confirmation on the price.
We are now in our 11th week since I paid, and the ordering is not yet done, much less start of construction. Please give this some attention.

From: christian@supercars88.com
Subject: Re: Document
Date: February 12, 2016 at 10:45:19 AM CST
To: [Victim A's email address]
Ok got it
Your production starts Monday
I will get everything together

On Mar 28, 2016, at 12:09 PM, [Victim A's email address] wrote:
I sent you a text about the heaters in the Mash Tun. My drawing shows 4 heaters, and the size is listed as:
Electric Heater    4    Assembly    8kw/psc
I am not sure if that means its an assembly of 4 heaters that equal 8kw in total, or four 8kw heaters that would equal 32kw total.  Obviously a BIG difference in terms of wiring.

On Mar 31, 2016, at 1:11 AM, christian@supercars88.com wrote:
centrifugal pump 2.2kw, mash tun mixer motor 1.5kw, lauter agitator motor 0.75kw

> On Mar 31, 2016, at 6:54 AM, christian@supercars88.com wrote:
> \<Invoice.pdf\>
> Sent from my iPhone
>
> From: [Victim A's email address]
> Subject: Re:
> Date: March 31, 2016 at 9:44:40 AM CDT
> To: "christian@supercars88.com" \<christian@supercars88.com\>
> Christian, please call me.
>
> From: [Victim A's email address]
> Subject: Invoice
> Date: March 31, 2016 at 10:49:46 AM CDT
> To: Christian Klehm \<kit@brauerwerks.com\>
> Hey Christian,
> We have some questions about the invoice. Would you please give me a
> call?
> Thanks

22. According to Victim A, "Christian" never responded to its inquiries and never paid it back the initial payment of $26,650.

23. Using the drawings provided by "Christian," Victim A located what Victim A believed to be the Chinese manufacturer of the equipment, which was Daeyoo Tech. Co., LTD. Victim A emailed Daeyoo Tech the drawings that "Christian" had emailed/attached to Victim A, on January 27, 2016. Federal law enforcement subsequently followed up with Daeyoo Tech. as well. Daeyoo Tech's statements to Victim A and Federal law enforcement were substantively the same.

24. The January 27, 2016, emails from "Christian" indicated that the attached drawings were of a "5BBL brewhouse." Daeyoo Tech confirmed that the attached drawings were its and that it had provided them to BrauerWerks (though the representative stated it provided the drawings in February; the emails clearly indicate they initially had to have been provided in January). Daeyoo Tech stated BrauerWerks never ordered the equipment or gave them any payment towards the equipment. Daeyoo Tech., therefore, of course stated that it did not manufacture it for, or ship it to, BrauerWerks. Daeyoo Tech stated it shipped no equipment at all to BrauerWerks, or received any payments from BrauerWerks for any reason, during 2016.

**IV.	CONCLUSION**

Based on the facts stated above, the government submits that there is probable cause to believe that defendant has violated federal law while on bond, specifically, that he has participated in a scheme to defraud using the mail, in violation of Title 18, United States Code, Section 1341.  The government respectfully requests that the Court conduct a hearing regarding the government's motion and whether defendant's bond should be revoked.

>	Respectfully submitted,
>
>	ZACHARY T. FARDON
>	United States Attorney
>
> By:	*/s/ Yusef Dale*
>	YUSEF DALE
>	Assistant United States Attorney
>	219 South Dearborn Street, 5th Floor
>	Chicago, Illinois 60604
>	(312) 353-5000

Dated:  July 22, 2016

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2016, I electronically filed the foregoing GOVERNMENT'S MOTION FOR HEARING ON REVOCATION OF DEFENDANT KLEHM'S BOND with the Clerk of the Court for the United States Northern District of Illinois by using the CM/ECF System.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

By: */s/ Yusef Dale*
YUSEF DALE
Assistant U.S. Attorney
219 South Dearborn, 5th Floor
Chicago, IL 60604
(312) 353-5300